IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION<br>60 Massachusetts Avenue, N.E.<br>Washington, D.C. 20002<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>FRATERNAL ORDER OF POLICE, LODGE 189<br>262 Orchard Avenue<br>Maple Shade, NJ 08052<br><br>and<br><br>SARAH BRYANT<br>2809 Barberry Lane<br>Bowie, MD 20715<br><br>　　　　　　　Defendants. | Civil Action No.: 14-CV-678 |

**COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD UNDER THE RAILWAY LABOR ACT**

**Introduction**

　　This action is brought pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA") and the Inspector General Act of 1978 (IG Act), Public Law 95-452, codified at 5 U.S.C. App. 3, to vacate an arbitration award, issued under the collective bargaining agreement ("CBA") between Plaintiff National Railroad Passenger Corporation ("Amtrak or Corporation") and the Fraternal Order of Police, Lodge 189 ("FOP Lodge 189" or "Union"), which exceeds the scope of the arbitrator's jurisdiction, and violates public policy with respect to Amtrak Inspector General investigations and Amtrak police officer

discipline. The Arbitration Award reinstated Amtrak Police Officer Sarah Bryant, who was terminated by Amtrak for various deceitful actions, including lying to investigators, engaging in personal transactions with her supervisor that resulted in a conflict of interest, and violating Maryland law by committing perjury. A copy of the Award is appended as Exhibit A. The Award must be vacated under the RLA and the IG Act because the Arbitrator exceeded the scope of her jurisdiction by looking outside of the CBA and misinterpreting the IG Act as requiring that Amtrak's Inspector General conduct its internal investigations according to the terms of the CBA that are not applicable to the Amtrak Inspector General when conducting investigations pursuant to his authority under the IG Act. Furthermore, the Arbitrator's decision to reinstate Ms. Bryant plainly conflicts with the federal public policies embodied in the IG Act of having Amtrak's Inspector General conduct independent investigations of federal and Maryland laws with respect to the high standards of honesty and integrity applicable to police officers.

**Parties**

1.      Pursuant to 49 U.S.C. §§ 24301(a) and (b), Plaintiff Amtrak is a railroad carrier "operated and managed as a for-profit corporation" with its "principal office and place of business in the District of Columbia." Amtrak is a citizen of the District of Columbia when deciding original jurisdiction of the district courts of the United States in a civil action." 49 U.S.C. § 24301(b). Amtrak is subject to the provisions of the RLA, 45 U.S.C. § 151, *et seq.*

2.      Defendant Union is a labor organization with its principal office located at 262 Orchard Avenue, Maple Shade, NJ 08052. It also operates through its Labor Committee located at 50 Union Avenue, 3rd Floor, New Haven, CT 06510. Currently,

Joseph E. Zawacki serves as Chairman of FOP Lodge 189, and Valerie Sousa serves as President of the Labor Committee. FOP Lodge 189 is the certified representative under the RLA for officers serving in the Amtrak Police Department ("APD"). FOP Lodge 189 represented Sarah Bryant in contractual disciplinary proceedings with Amtrak.

3. Defendant Sarah Bryant is an individual and terminated employee of Amtrak in the position of Police Officer. Sarah Bryant resides at 2809 Barberry Lane, Bowie, MD 20715.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367, 45 U.S.C. § 153(q) and 49 U.S.C. § 24301(b).

5. Venue is proper in this Court pursuant to 45 U.S.C. § 153(q) and 29 U.S.C. § 1391. Venue is appropriate in this judicial district under 28 U.S.C. § 1391, because Amtrak is a resident of the District of Columbia and FOP Lodge 189 represents a substantial number of Amtrak police officers serving in the District of Columbia metropolitan area.

## Facts

### The Office of Inspector General for Amtrak

6. The Office of Inspector General for Amtrak ("OIG") was established by the IG Act, as amended in 1988 (Pub. L. No. 100-504), to consolidate existing investigative and audit resources into an independent organization headed by the Inspector General to promote economy, efficiency, and effectiveness; and to detect and prevent fraud, waste, and abuse.

7. Subsequently, the Inspector General Reform Act of 2008 (Pub. L. No. 110-409) amended and strengthened the authority of the Inspectors General. The mission

of the OIG is to provide independent, objective oversight of Amtrak's programs and operations through audits, inspections, evaluations, and investigations focused on recommending improvements to Amtrak's economy, efficiency, and effectiveness; preventing and detecting fraud, waste, and abuse; and providing Congress, Amtrak management, and Amtrak's Board of Directors with timely information about problems and deficiencies relating to Amtrak's programs and operations.

8. One of its main missions is to keep the head of Amtrak, its Board of Directors and the Congress fully informed regarding fraud, abuses, and other serious problems.

9. The OIG is also charged with providing "policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations." 5 U.S.C. App. 3 § 4(A)(1).

10. The OIG is given broad powers to fulfill its mission, such as the authority to issue subpoenas or to administer oaths and affirmations whenever necessary to perform the functions of the office.

11. To further carry out the purpose of the OIG, the IG Act states that the "Inspector General shall report to and be under the general supervision of the head" of Amtrak. The law expressly prohibits the Inspector General from reporting to, or being subject to the supervision of any other employee or officer of Amtrak. 5 U.S.C. App. 3 § 8G (d)(1).

12. In addition, the IG Act states that "the head" of Amtrak "shall not prevent or prohibit the Inspector General from initiating, carry out, or completing any audit or investigation, or from issuing any supbena [sic] during the course of any audit or

investigation." 5 U.S.C. App. 3 § 8G (d)(1).

13.     The OIG does not participate in collective-bargaining under the RLA with Amtrak employees and does not review or sign Amtrak's collective bargaining agreements with its employees subject to the RLA.

### The Collective Bargaining Agreement

14.     Amtrak and FOP Lodge 189 are parties to a CBA effective June 10, 2010. At all times pertinent to this action, the CBA has remained in effect.

15.     Rule 50 of the CBA entitled Police Officers Bill of Rights, which was collectively bargained, governs the procedures that should be followed when the Amtrak Police Department investigates complaints against its officers. The relevant provisions are as follows:

> All employees shall be entitled to the protection of what shall hereafter be termed the "Bill of Rights for Police Officers in the National Railroad Passenger Corporation Department" and which provides as follows:
>
> The Police Department has established the following procedures to govern the conduct and control of interrogations.
>
> The wide-ranging powers and duties given to the Department and its members involve them in all manner of contacts and relationships with the public. Out of these contacts come many questions concerning the actions of employees. These questions often require immediate investigation by superior officers designated by the Chief of Police. In an effort to ensure that these interrogations are conducted in a manner which is conducive to good order and discipline, the following guidelines are promulgated....
>
> 2. The employee shall be advised of his right to an adjournment in order to have the Organization's counsel (or his designee) and/or Organization representative present.
>
> 4. If an employee is under arrest or is likely to be, that is, if he is a suspect or the target of a criminal investigation, he shall be given his rights pursuant to the Miranda decision.

> 7. The complete interrogation of the employee shall be recorded mechanically or by a stenographer. All recesses called during the questioning shall be noted. The employee or the Organization's counsel (or his designee) shall be entitled to a transcript of such stenographic record within a reasonable time after such interrogation.
>
> 8. The Department shall afford an opportunity for an employee, if he so requests, to consult with counsel and/or with a representative of the Organization before being questioned concerning a violation of the Rules and Regulations, provided the interrogation is not unduly delayed. The employee shall have the right to the Organization's counsel (or his designee) and/or Organization representative present to assist him during the interrogation.

16. The CBA by its terms makes no references to investigations conducted by the OIG.

### The Internal Affairs and Inspector General Investigations

17. Sarah Bryant was hired by the APD in 2008 and was immediately assigned to the Canine Unit.

18. On September 30, 2011, the OIG received an anonymous complaint stating that Inspector William Parker, the commanding officer of the APD Canine Unit, and Ms. Bryant's supervisor, was assigning a disproportionate amount of "surge overtime" in the Canine Unit to his subordinate Ms. Bryant.

19. The anonymous complaint also alleged that Mr. Parker and Ms. Bryant jointly owned a residence in Bowie, Maryland and provided a property search listing showing that both Ms. Bryant and Mr. Parker owned the residence.

20. The Amtrak Police Department Internal Affairs Unit ("APD IA") began investigating Ms. Bryant and Mr. Parker in October 2011 after receiving a complaint against Mr. Parker.

DB1/ 78465593.7

6

21. The OIG and the APD IA conducted separate investigations of the allegations with respect to Ms. Bryant.

22. The APD IA interviewed Ms. Bryant on December 22, 2011 and February 22, 2012. Ms. Bryant denied owning the property with Mr. Parker during both interviews.

23. The APD IA investigation ended around June 2012 and did not result in the bringing of any internal Amtrak charges against Ms. Bryant. Instead the APD IA issued a letter of counseling to Mr. Parker for creating an appearance of impropriety and a potential conflict of interest.

24. The OIG continued its investigation and collected the ADP IA's investigation reports and records.

25. The OIG interviewed Ms. Bryant and Mr. Parker on September 25, 2012. At the beginning of the interviews, both Ms. Bryant and Mr. Parker were given *Garrity* warnings informing them that they had the right to remain silent and that anything they said could and would be used against them. Ms. Bryant did not ask for Union representation during the interview. The OIG interviewers did not tell Ms. Bryant that she had a right to Union counsel, inform her of her *Miranda* rights or record the interview.

26. The OIG later informed APD's Acting Chief of Police Lisa Shahade that Ms. Bryant and Mr. Parker were dishonest in their interviews.

27. The OIG issued a report on October 22, 2012 to Chief Shahade finding that Ms. Bryant and Mr. Parker made false statements and omissions to the APD IA and the OIG regarding their joint homeownership and their relationship. The OIG report also

found a conflict of interest and violations of Corporation policy. In addition, the OIG found that Ms. Bryant had committed perjury under Maryland law by signing a December 7, 2005 affidavit attached to the property deed attesting that she was a first-time home buyer, when she had in fact previously owned a home in Maryland.

### Administrative Charges against Ms. Bryant

28. On November 19, 2012, Amtrak issued administrative charges against Ms. Bryant. She was charged with violating Amtrak's Operations Guide – Code of Ethics 210.4: "… I will keep my private life exemplary as an example to all … Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land the regulations of the Department."

29. Ms. Bryant was also charged with violating Amtrak Code of Conduct 320:2: "Trust –In our partnership with our community which we serve, we depend upon trust. As a partner, we serve effectively if we are professionally credible, both individually and as a department. We are committed to: Being honest and truthful … Holding ourselves to high standards of moral and ethical conduct, both professionally and in our personal lives …."

30. Ms. Bryant was also charged with violating Amtrak Code of Conduct 320:7: "Members shall be responsible for knowledge of, and full compliance with all Police Operations Directives, all pertinent administrative memos and all other instructions."

31. Ms. Bryant was further charged with violating Amtrak Code of Conduct 320:10: "Members must promptly carry out the directives, rules and regulations of the department, and obey instructions from supervisors, superior officers or their designees."

32. Ms. Bryant was also charged with violating the Standards of Excellence, Amtrak Values –Integrity: "We will always tell the truth.  We will comply with the spirit and letters of laws, practice high ethical standards of conduct, be socially and environmentally responsible and strive to earn and maintain the trust and respect of our employees and the public… Trust and Honesty: because honesty is so important to trust and to our ability to work together as a team, Amtrak has no tolerance for employees who are dishonest. "

33. Ms. Bryant's final charge was for violating the Amtrak Policy and Instruction Manual – 1.3.4 Ethical Conduct and Conflict of Interest Policy, Section 5 which prohibited the following acts:

- Fraud or Deception. Conducting any transaction involving fraud or deception with respect to Amtrak, a customer, a supplier or any other individual or entity....

- Engaging in activities that pose a conflict of interest, or the appearance of a conflict of interest between a Covered Individual and Amtrak or between Amtrak and a third party.

- Failing to exercise due diligence to identify a potential or actual conflict of interest between a Covered individual and Amtrak or between Amtrak and third party.

- Other Unethical Conduct which is prohibited by law or regulation or which the Covered Individual knows or reasonably should know is dishonest or unethical....

34. Ms. Bryant was removed from service pending a discipline conference held on December 3, 2012.  She later refused an offer to resign rather than be terminated and was therefore terminated on December 4, 2012.

### Grievance and Arbitrator's Decision

35. The Union appealed the termination through the steps outlined in the CBA and filed for arbitration on April 9, 2013.

36. An arbitration hearing pursuant to the CBA and 45 U.S.C. Section 153 was held in Philadelphia, Pennsylvania on November 15, 2013 before Arbitrator Joan Parker.

37. Arbitrator Parker issued her Opinion and Award on March 24, 2014. Arbitrator Parker did not address the merits of Amtrak's administrative charges against Ms. Bryant. Arbitrator Parker found that the OIG violated Rule 50 of the CBA – Police Officers Bill of Rights – when interviewing Ms. Bryant by failing to offer her an adjournment in order to secure the presence of the Union's counsel or representative, failing to read her *Miranda* warnings and failing to tape or record the interviews.

38. Arbitrator Parker rejected Amtrak's contention that the third paragraph of the Rule 50 Bill of Rights only applies to superior officers designated by the Chief of Police to conduct investigations of APD officers and not investigations of the OIG.

39. In reaching her decision, Arbitrator Parker interpreted the federal IG Act to state that even though the OIG is an independent agency, it is a part of Amtrak, for purposes of application of CBA limitations on investigations to OIG investigations.

## Count 1

**The Arbitration Award Should be Vacated Because the Arbitrator Exceeded the Scope of Her Jurisdiction and Failed to Properly Carry Out Her Duties in Misconstruing Rule 50 of the Bill of Rights.**

40. Amtrak incorporates by reference all preceding paragraphs of this Complaint, and all allegations therein, as if fully set forth herein.

41. Arbitrator Parker failed to follow the language in the CBA which demonstrates that the Bill of Rights interrogation procedures only applies to investigations by superior officers designated by the Chief of Police. Based on this error, Arbitrator Parker failed to perform her contractual function of addressing the merits of

Amtrak's decision to terminate Ms. Bryant.

42. Furthermore, Arbitrator Parker exceeded the scope of her jurisdiction in relying on material outside of the CBA when she interpreted the IG Act to read that notwithstanding the fact that the OIG was established as an independent and objective unit, it is a part of the Corporation and therefore, was bound by the CBA restrictions with respect to investigations.

43. Arbitrator Parker lacked jurisdiction under the RLA and the IG Act to determine that the OIG must conduct its investigations by the terms of Amtrak's CBA with FOP Lodge 189.

## Count 2

### The Arbitration Award Should be Vacated for Violation of Public Policy in Misinterpreting the IG Act to Make Inspector General Investigations Subject to CBA Procedures.

44. Amtrak incorporates by reference all preceding paragraphs of this Complaint, and all allegations therein, as if fully set forth herein.

45. The IG Act clearly states that its purpose is to "create independent and objective units ... to conduct and supervise audits and investigations." 5 U.S.C. App. 3 § 2.

46. The Arbitration Award clearly disregards the IG Act's statutory purpose that the OIG have independence to conduct investigations by ruling that the Amtrak officials can bargain with the Union regarding restrictions on how the OIG, an independent investigation unit operating under specific statutory authority, can conduct its investigations.

47. The Award makes investigations by the OIG subject to the procedures of

the CBA. This is in direct contrast to public policy goals of the IG Act to give the OIG broad authority to develop its own policies and procedures for conducting independent investigations.

48. Requiring that the OIG conform its procedures to comply with the procedures outlined in the CBA has the effect of violating the IG Act which states that Amtrak cannot prohibit or prevent the OIG from "initiating, carry out, or completing any audit or investigation." 5 U.S.C. App. 3 § 8G (d)(1).

## Count 3

**The Arbitration Award Should be Vacated for Manifest Disregard of Public Policy of Having Police Officers Conduct Themselves with the Utmost Integrity and Honesty**

49. Amtrak incorporates by reference all preceding paragraphs of this Complaint, and all allegations therein, as if fully set forth herein.

50. By ordering the reinstatement of a police officer found to have made false and misleading statements during an internal investigation and committed perjury under Maryland law, the Arbitration Award disregards well-defined and dominant public policies, such as Maryland law which prohibits persons from making false statements during internal investigations of law enforcement officers and Maryland's perjury statute prohibiting individuals from willfully giving a false "oath or affirmation as to a material fact" in an affidavit required by the State. MD Code, Pub. Safety § 3-113; Md. Code, Crim. Law § 9-101.

51. Arbitrator Parker declined to consider the public policy standards that police officers should be held to high levels of integrity and honesty and should not violate the law. Both the APD IA and the OIG investigations found evidence,

independent of the information gleaned from interviews with Ms. Bryant, which demonstrated that Ms. Bryant had committed perjury under Maryland law and was engaged in the appearance of a conflict of interest by owning a residence with Mr. Parker.

52.   Even if Arbitrator Parker found that Ms. Bryant's due process rights under the CBA were violated during the interviews, Arbitrator Parker still could have addressed the merits of the administrative charges brought against Ms. Bryant.

53.   Despite the risk of having dishonest police officers that have found to violate numerous Amtrak policies and Codes of Conduct and Ethics continue to serve the public, Arbitrator Parker disregarded the overarching public policy towards honesty and trust by ordering Amtrak to reinstate Ms. Bryant to her position as a public safety officer.

## Conclusion And Prayer For Relief

WHEREFORE, Plaintiff Amtrak respectfully requests that this Court:

1.   Grant judgment in its favor and against Defendants and vacate, set aside, and declare the Arbitrator's Award to be null and void and of no legal effect; and

2.   Grant Amtrak costs and other relief as this Court deems to be just and proper.

| | |
|---|---|
| Dated: April 22, 2014 | Respectfully submitted, |
| | /s/*Thomas E. Reinert, Jr.* _____ |
| OF COUNSEL | Thomas E. Reinert, Jr. |
| Thomas S. Bloom | D.C. Bar No. 336867 |
| National Railroad Passenger Corporation. | Morgan, Lewis & Bockius |
| 60 Massachusetts Avenue, N.E. | 1111 Pennsylvania Ave, NW |
| Washington, D.C. 20002 | Washington, DC 20004 |
| (202) 906-2623 | (202) 739-5084 |
| (202) 906-3112 | (202) 739-3001 |
| tbloom@amtrak.com | treinert@morganlewis.com |
| | |
| | *COUNSEL FOR THE NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)* |