**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **National Railroad Passenger Corporation,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Civil Action No. 14-cv-678(GK)** |
| : | |
| **Fraternal Order of Police, Lodge 189 Labor Committee,** : | |
| : | |
| **Defendant.** : | |

### MEMORANDUM OPINION

Plaintiff National Railroad Passenger Corporation, best known as Amtrak ("Plaintiff" or "Amtrak"), brought this action to vacate an arbitration award under the Railway Labor Act, 45 U.S.C. § 151 et seq. ("RLA"), and the Inspector General Act of 1978, 5 U.S.C. App. 3 § 1 et seq. ("IG Act").

After a labor dispute between Amtrak and Defendant, the Fraternal Order of Police, Lodge 189 Labor Committee ("Defendant" or "the FOP") involving one of the FOP's members, on March 24, 2014, an Arbitrator issued a Decision and Award in favor of the FOP. See Arbitrator's Decision [Dkt. No. 22-1]. On April 22, 2014, Amtrak filed its Complaint and Petition to Vacate Arbitration Award under the Railway Labor Act [Dkt. No. 1], contending that the Arbitrator's Decision exceeded the scope of her jurisdiction and

violated public policy with respect to Amtrak Inspector General investigations and Amtrak police officer discipline.

On July 10, 2015, and August 14, 2015, the Parties filed Cross-Motions for Summary Judgment. See Amtrak's Mot. for Summ. J. [Dkt. No. 23]; FOP's Cross-Mot. for Summ. J. [Dkt. No. 25]. At the heart of the Parties' Cross-Motions was a single legal question: are procedural limitations on the conduct of internal investigations contained in a collective bargaining agreement between Amtrak and the FOP binding on the Amtrak Office of Inspector General? The Court concluded that they are not, and on November 2, 2015, issued a Memorandum Opinion[1] [Dkt. No. 31] and Order [Dkt. No. 30] granting Amtrak's Motion for Summary Judgment and denying the FOP's Cross-Motion for Summary Judgment.

On November 25, 2015, the FOP filed a Motion for Reconsideration ("Def.'s Mot.") [Dkt. No. 32], contending that the "Court's November 2, 2015 Memorandum Opinion [Dkt. No. 31] contains a number of legal errors which, if not corrected, will result in a manifest injustice to not only the FOP, but to any federal labor union subject to the investigatory powers of their respective inspectors general." Def.'s Mot. at 1. On December 8, 2015, Amtrak

---

[1] Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189, No. 14-CV-678 (GK), 2015 WL 6692104, at *1 (D.D.C. Nov. 2, 2015).

-2-

filed its Opposition ("Pl.'s Opp'n") [Dkt. No. 33], and on December 14, 2015, the FOP filed its Reply ("Def.'s Reply") [Dkt. No. 34].

Upon consideration of the FOP's Motion for Reconsideration, Amtrak's Opposition, the FOP's Reply, and the entire record herein, and for the reasons stated below, the Court finds the FOP's Motion to be without merit, and accordingly, the Motion shall be **denied**.

## I.    BACKGROUND

The Court assumes familiarity with its previous Memorandum Opinion in this case and therefore summarizes only the most relevant facts.

On April 9, 2013, pursuant to the grievance procedure set forth in the Collective Bargaining Agreement ("CBA") between Amtrak and the FOP, a former employee of the Amtrak Police Department ("APD") appealed her termination to an Arbitrator.

On March 24, 2014, the Arbitrator issued her Decision, holding that Amtrak did not have just cause to discharge the former officer because Amtrak's Office of Inspector General ("OIG") failed to abide by certain procedural requirements contained in Rule 50 of the Amtrak-FOP CBA during an investigatory interview of the APD officer.

Although Rule 50 does not specifically mention the OIG, the Arbitrator reasoned that its terms applied to OIG investigations

because Amtrak agreed to the CBA containing Rule 50, and the OIG is part of Amtrak's workforce.

As a remedy for the officer's wrongful termination, the Arbitrator ordered Amtrak to reinstate the officer to her prior position with her previous level of seniority, back pay, and retroactive payment of benefits. Arbitrator's Decision at 22 [Dkt. No. 22-1].

The Arbitrator did not reach any other issues raised by the Parties and rested her Decision and Award entirely upon the OIG's failure to comply with Rule 50. Id. ("[Amtrak] did not have just cause to discharge Grievant Sarah Bryant because the procedural safeguards guaranteed to employees by Rule 50 . . . were not afforded her during the . . . Amtrak OIG interrogation.").

Upon review of the Arbitrator's Decision, the Court held that application of Rule 50 to the OIG is contrary to the explicit, well-defined, and dominant public policy of Inspector General independence. Mem. Op. at 14 (citing the Inspector General Act, 5 U.S.C. App. 3 § 8G(d)(1)). The Court noted that

> Our Court of Appeals and the Court of Appeals for the Fourth Circuit have spoken directly to the question the parties present: "[P]roposals concerning Inspector General-investigation procedures are not appropriately the subject of [collective] bargaining, because to allow such bargaining would impinge on the statutory independence of the I[nspector] G[eneral]." See U.S. Dep't of Homeland Sec. U.S. Customs & Border Prot. v. Fed. Labor Relations Auth. ("DHS"), 751 F.3d 665, 668

(D.C. Cir. 2014); accord U.S. Nuclear Regulatory Comm'n
v. Fed. Labor Relations Auth. ("NRC"), 25 F.3d 229, 234
(4th Cir. 1994).

Mem. Op. at 14.

## II.   STANDARD OF REVIEW

A motion for reconsideration under Fed. R. Civ. P. 59(e)
is "discretionary and need not be granted unless the district
court finds that there is an intervening change in controlling
law, the availability of new evidence, or the need to correct
a clear error or to prevent manifest injustice." Ciralsky v.
CIA, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting Firestone v.
Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Importantly,
"Rule 59(e) motions are aimed at reconsideration, not initial
consideration." GSS Grp. Ltd v. Nat'l Port Auth., 680 F.3d
805, 812 (D.C. Cir. 2012) (internal citations, quotation
marks, and ellipses omitted). "Accordingly, a Rule 59(e)
motion may not be used to raise arguments or present evidence
that could have been raised prior to the entry of judgment."
Id. (internal citations, quotation marks, and ellipses
omitted).

## III. ANALYSIS

The FOP contends that the Court's Memorandum Opinion in
this case contains a number of legal errors that require
correction. According to the FOP, these errors include the

-5-

Court's failure 1) to address the FOP's argument that sources of law beyond the CBA limited the OIG's investigative powers in the same manner as Rule 50, 2) to balance the policy goals of the Railway Labor Act and the Inspector General Act, and 3) to prevent Amtrak from outsourcing internal investigations to its OIG instead of conducting them through the APD's Office of Internal Affairs ("OIA"). The Court finds none of the FOP's contentions to be compelling.

## A.   Other Limitations on OIG Investigative Powers

In its Cross-Motion for Summary Judgment, Defendant relied on Quality Standards of Investigations ("QSIs"), which are issued by the Council of the Inspectors General on Integrity and Efficiency ("CIGIE"), to show that the CBA did nothing more than reassert limitations that were already binding on the OIG. Def.'s Cross-Mot. for Summ. J. at 27 ("Given that Amtrak's OIG incontrovertibly follows the standards set forth in the Council's QSI [sic], it is as disingenuous as it is hypocritical for Amtrak to suggest that its OIG is somehow immune from the strictures of Rule 50[.]").

According to the FOP, "in demanding that Amtrak's OIG honor the due-process protections guaranteed under Rule 50, the FOP is not imposing any further restrictions upon Amtrak OIG's independence than those which Congress has already

-6-

imposed via the Inspector General Reform Act of 2008." Def.'s
Reply at 13 (section heading written in all caps in original).

The FOP contends that "[t]he Court erred by ignoring
altogether the FOP's argument concerning the statutory
restrictions that Congress -- not Amtrak or the FOP -- placed on
Amtrak's inspector general when Congress created the Council of
the Inspectors General on Integrity and Efficiency[.]" Def.'s Mot.
at 1. According to the FOP, "the Court failed to make even a
passing reference to the CIGIE or the [QSIs] the CIGIE promulgates
-- standards by which Amtrak's [OIG] was statutorily bound to abide
as a member of CIGIE[.]" Def.'s Mot. at 2.

The FOP continues, "The Court was and is obligated to address
in at least some fashion all of the arguments that the FOP raised
in its briefs in defense against Amtrak's lawsuit. To refuse to do
so invites an unnecessary remand on appeal." Def.'s Mot. at 2
(emphasis in original). It reasons, "[h]ad this Court performed
even a cursory review of those standards in its Memorandum Opinion,
it would have been hard-pressed to deny that the CIGIE imposes
almost identical restrictions upon its OIG members in conducting
their respective investigations as those set forth in Rule 50 of
the collective negotiations agreement between Amtrak and the FOP."
Def.'s Mot. at 6.

Defendant's argument, however, ignores the Court's discussion on page 20 of its Memorandum Opinion, where the Court stated:

> The FOP also contends that Amtrak has failed to specifically show how Rule 50 would interfere with OIG's investigative authority. This argument misses the mark. As the DHS court explained, "[t]he important point [] is not that particular negotiated procedures interfere with specific aspects of OIG authority under the Inspector General Act but, rather, that negotiation in and of itself is antithetical to OIG independence established by the Inspector General Act." DHS, 751 F.3d at 672 (emphasis added) (internal quotation marks and citation omitted). Thus, Amtrak need not show precisely how Rule 50 would burden the OIG. It is enough to nullify the Arbitrator's Decision that, if the Decision were enforced, Rule 50 would regulate the OIG's conduct during employee interviews.

Mem. Op. at 20 (emphasis added in the Memorandum Opinion).

The FOP's contention that the Arbitrator correctly enforced Rule 50 of the CBA because it imposed no additional restrictions on the OIG is not convincing because it relies on an inquiry into which negotiated procedures interfere with OIG authorities and which do not. Our Court of Appeals had stated squarely that such an inquiry conflicts with the OIG Act. DHS, 751 F.3d at 672.

It is true that the Court does not discuss the intricacies of the QSIs or the CIGIE or any other pre-existing restrictions on the OIG's authority. No discussion is necessary -- indeed, such an inquiry would conflict with DHS, in which our Court of Appeals ruled that "negotiation in and of itself is antithetical to OIG independence established by the Inspector General Act." DHS, 751

F.3d at 672. Even if a CBA included negotiated procedures mirroring restrictions already incumbent on the OIG, the terms of the CBA would not be directly binding on the OIG.[2]

### B.   The IG Act and the Railway Labor Act

The FOP next claims that "[t]he Court also failed to perform any analysis whatsoever of the interplay between the statutory independence afforded to inspectors general under the Inspector General Act [] and the equal -- if not superior -- statutory importance of free and uninhibited labor relations promoted by the Railway Labor Act ("RLA")." Def.'s Mot. at 2. "Because Rule 50 of the parties' collective negotiations agreement imposes no further restrictions upon the independence of Amtrak's inspector general to conduct investigations than those restrictions set forth by the CIGIE in the QSI, this Court erroneously concluded that the public policy goals of the [IG Act] trump the [RLA's] longstanding aim of promoting and ensuring labor stability through collective negotiations." Id.

---

[2] The FOP claims that Congress itself has imposed restrictions on OIG's authority similar to those of Rule 50. Def.'s Mot. at 1. The FOP is incorrect. 5 U.S.C. App. 3 § 11(c)(2) requires Inspectors General to "adhere to professional standards developed by the Council" "[t]o the extent permitted under law[.]" The FOP believes that those standards, the QSIs, mirror the provisions of Rule 50. But as § 11(c)(2) makes clear, the QSIs are not established by Congress but by the Council of Inspectors General on Integrity and Efficiency. Moreover, if the QSIs, which are merely "professional standards developed by the [CIGIE]," conflict with a Congressional command, clearly, the QSIs must yield. Id.

To a large extent, this argument merely restates the last, and so the Court again refers the FOP to our Court of Appeals' holding in DHS that "proposals concerning Inspector General-investigation procedures are not appropriately the subject of [collective] bargaining, because to allow such bargaining would impinge on the statutory independence of the I[nspector] G[eneral]." DHS, 751 F.3d at 668 (internal quotation marks omitted). It does not matter whether "Rule 50 of the parties' collective negotiations agreement imposes no further restrictions upon the independence of Amtrak's inspector general to conduct investigations." Def.'s Mot. at 2. Negotiation itself is what is not allowed. Moreover, the DHS court's unambiguous statement makes clear that the policy of OIG independence takes precedence over "the Railway Labor Act's longstanding aim of promoting and ensuring labor stability through collective negotiations," Def.'s Mot. at 2 (emphasis added). See Memorandum Opinion at 14-17 (section titled "Collective Bargaining and the Inspector General").

True, the labor-relations statute at issue in DHS was the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101 et seq., rather than the Railway Labor Act, but the FOP has provided no reason why the two analogous regimes should receive different treatment. Indeed, the FOP cites another case considering the FSLMRS -- not the Railway Labor Act -- to support

its arguments. Def.'s Mot. at 8 (citing <u>U.S. Nuclear Regulatory</u> <u>Comm'n v. Fed. Labor Relations Auth.</u> ("NRC"), 25 F.3d 229, 236-37 (4th Cir. 1994) (Murnaghan, J. dissenting) for the proposition that the policies underlying labor-relations statutes and the Inspector General Act are deserving of equal consideration).[3]

For these reasons, the Court concludes, as it did in its Memorandum Opinion, that the principle of Inspector General independence underlying the IG Act prevails over the collective bargaining rights established by the federal labor relations statutes. Consequently, the FOP's second ground for reconsideration is without merit.

### C.   Internal Investigations and the OIG

The FOP's final argument is that "the Court failed [] to appreciate the consequences of its decision to vacate [the] Arbitrator['s] March 24, 2014 [Decision] and Award -- namely, the tacit endorsement of Amtrak's calculated effort to make a complete end-run around the due process protections that unmistakably govern APD [Office of Internal Affairs ("OIA")] investigations and to instead rely solely upon the poisoned fruits of Amtrak OIG

---

[3] The Court also notes that the FOP cites a <u>dissent</u> for the core of its argument. Def.'s Mot. at 8 ("This fundamental truth mirrors Circuit Judge Murnaghan's dissent in [NRC], 25 F.3d [at 236-37]"). The <u>NRC</u> majority, which our Court of Appeals favorably cites in <u>DHS</u>, held that Inspector General independence does, indeed, take precedence over collective-bargaining rights. See <u>NRC</u>, 25 F.3d at 234-35; <u>DHS</u>, 751 F.3d at 668.

investigations in meting out discipline to its employees." Def.'s Mot. at 9. The FOP fears that the Court's decision will lead to "a systemic practice of outsourcing all future APD OIA investigations to Amtrak's inspector general -- or, at the very least, those select investigations for which Amtrak has a vested, tactical interest in shirking its contractual obligation to afford due-process protections prior to their commencement." Id. at 9-10. "Such a role[,]" the FOP concludes, "is not what either Congress or President Carter envisioned for OIGs nationwide when those two co-equal branches of government enacted the Inspector General Act in 1978." Id. at 10.

The FOP's final argument is that it is a violation of the IG Act itself for Amtrak to use the findings from an OIG investigation ("poisoned fruit") to "met[e] out discipline to its employees[.]" Def.'s Mot. at 9. This is a new argument which the FOP failed to raise in its Cross-Motion for Summary Judgment. The FOP points to language from its initial briefs indicating its fear that Amtrak would outsource internal investigations to its OIG. See Def.'s Reply at 41. However, there is no hint in its initial briefs that such a course of action would violate the IG Act. Since Defendant could have raised this argument in its Cross-Motion and failed to do so, the argument shall not be considered at this late date. GSS Grp. Ltd, 680 F.3d at 812.

Finally, to the extent that the FOP is simply voicing its policy concerns about the practical effects of the IG Act on agency operations, it must direct those concerns to Congress. This Court cannot provide the remedy that the FOP seeks.

## IV.   CONCLUSION

For the foregoing reasons, the FOP's Motion for Reconsideration [Dkt. No. 32] shall be **denied.**


December 3D, 2015                           Gladys Kessler
                                     United States District Judge

**Copies to**: attorneys on record via ECF